May it please the court. Good morning. The district court committed two errors. First, well this appeal involves two separate and distinct errors, let me put it that way. First, the district court erred in concluding that the plaintiff's agreement in this case is a consumer credit transaction. In reaching its decision, the court erred in concluding that the agreement is third-party financing of a tax obligation. The court also erred in concluding that the agreement in consumer in nature, both of which were required. The second error the district court committed was with regard to standing and finding that plaintiff has standing to proceed on his EFTA claims. Particularly lacking or centrally lacking in the complaint in this case is any allegation or evidence of an actual or imminent concrete harm. Rather, this is cases very similar to Dreher, very similar to Beck, and that what we have at the end of the day is a bare procedural violation absent any actual or imminent harm. And therefore, we don't have Article 3 standing. In fact, if we look at the complaint, it resembles closely or amounts largely to seeking an advisory opinion that if certain actions might happen in the future, if we speculate that certain things could happen, none of which is contained in the complaint, none of which is pled, then would we have a viable cause of action. And that's not what standing is designed to do. The facts were, I had some trouble with understanding exactly what had happened. Has, to your knowledge, has Mr. Curtis made a payment? Has he been subjected to the application of the ACH provision? Judge Duncan, to my knowledge, no payment has been made at any time via ACH transaction. And that is... It wasn't alleged, I don't believe. It was not alleged. And we think that's important. We have to go by, this is a facial challenge, correct? And what we have to go by and what we're guided by here is what's in the complaint and what's not in the complaint. And what's not in the complaint is more telling here than what's in the complaint, as this Court has often sees. But to your question, there is no allegation in the complaint that there was any payment ever made by an ACH transaction. And subtly, there is no allegation that there was a requirement to do so. Really, all the allegation in the complaint is that there was an authorization that was executed. But there is no allegation, the Court will find nowhere in the complaint, an allegation that Mr. Curtis has made a payment by ACH transaction or that he was required to do so. And that really gets to the core of the problem here, from a standing perspective anyway, Your Honors, is all we have here is theoretical and speculative. We don't have any other. We don't have the, what this Court has found in other cases, there's nothing to push it beyond the speculative to the actual, the imminent. Well, now there's statutory damages though, aren't there? He doesn't have to allege actual damages, does he, under the statute? He's got to allege an When you have statutory damages as a remedy, doesn't that solve the problem? Respectfully, I would say no. Because in that scenario, any, you would basically remove the actual injury requirement in any case that involves statutory damages. If it was enough that simply statutory damages was available, then you would need no showing of actual or imminent harm. And that's, that's not what the case law says and that's not what this Court has said. I appreciate the question. Now you're saying case law, which case law says that? Not with regard to this statute. No, no. I'm saying more generally, and let me be more clear in response to your question, is I'm saying that this Court has consistently held, based on Spokio, Beck, Dreher, that there must be, to have standing to get in the door, to get your case heard, there must be an actual or imminent concrete harm. In this case, there's no concrete harm. The ability, I'm So in response to your question, belatedly, is, our position would be the mere fact that actual damages exist does not satisfy the actual harm requirement, the concrete actual harm requirement required to have standing. You must first have standing before you can proceed to damages. It's a gatekeeper, as the Court knows, and that gate should not be open here because there is no allegation, evidence, there's nothing. There's a complete absence of any allegation of a actual harm. But it was my understanding that it was at least alleged that Propel required Curtis to agree to prepay by pre-authorizing electronic fund transfers and directed him to bring a voided check to closing in an authorization form, and his argument is that the authorization form doesn't have a space on it which allows him to decline to pre-authorize the electronic funds transfer. That's correct, Judge. A couple points in response. Signing the authorization form is not an actual injury, and it goes back. I'm sorry, I just didn't hear you. That's all right. I need to slow down. Signing the authorization form is not an actual concrete injury in this case. But it requires him to pay by that means, doesn't it? The agreement that he signed? But in this case, Judge, as Judge Duncan pointed out, there is no allegation that he was required to pay by that means, and that is determined. Well, I thought he was directed to, that was why he was directed to bring the voided check. My question really went more to whether or not there had been any such payment and was directed toward the sort of ambiguous nature of the facts. Do you dispute that he was required to bring a automatic withdrawal to set up the authorization? We don't dispute that the authorization took place, Judge. But that, respectfully, is not the issue. The issue is, is there an allegation in the complaint of a concrete harm? And signing that authorization does nothing but create the statutory violation. There's no harm, there's no and. What I'm worried about is what you're doing is trying to create this new standing problem when what you're really arguing is that he's not stating a claim. No. He's not adequately stating a claim. You know, we see this in a lot of cases where people start arguing standing when it seems to be a failure to plead damages, it seems to me. And I don't know why this, you still haven't satisfied my mind why this is standing rather than failure to state a claim. Judge Kannon, it's both. But I don't get to argue the failure to state a claim before you today. What I do argue is the standing and to answer your question, at least our position is, it is a standing issue because there's no actual concrete harm. And let me, for example, this case has had. If the form has, if he was required to agree to ACH, why would that not be the harm? That's. Under the to entitle him, as Judge Kannon says, the statutory damages. If, as he alleges that the form doesn't have a space and a space for him to sign for opt out. Right. Two answers that that would conflate the statutory violation with the damages component, which is what this court found happened in Dreher. Our view, Judge, the violation, the statutory violation in question is. Executing or signing this authorization. That is what the plaintiff would have you believe is the violation. Okay. And there's your statutory violation. That is not. I'm sorry. No, no, no, no, please. That that does not. And that's central to our point is that is not the mere fact of the violation. Right. Does not give rise to the actual injury. That's what the court realized and sent back to the district court Dreher. It's the same situation is that the court in district court conflated the two and said an abridgment of the rights. Any violation that's sufficient because that's what Congress contemplate. Our position is that's not sufficient and it's not. It's not a difficult. Ours is not. We're not trying to create a new standing position. Why? Why isn't talking about the statutory damage provision again? It seems to me that Congress and most legislatures create a statutory damage provision by virtue of the fact that oftentimes a plaintiff can't prove actual damages. And so but there's there's a sense by the legislature that they want to punish the wronged or absent actual damages. Why? Why are those? Why can't those two things be complimentary? Great question. Just judge. Yes, I almost elevated you. I'm sorry. Um, they because damages and harm are not the same. Damages are what you're entitled to necessarily. If you get into court and you prevail, you're and to your point that there's a couple reasons you have statutory damages. Sometimes the amount that would be received or recovered is so low that the court has often viewed that as a disincentive. And so we put statutory damages in place to incentivize, um, or at least level the playing field. But in this case, it's not the same. It's not whether or not you have actual damages or statutory damages does not go to the issue of whether you've me be clear, and I'll try to respond if I haven't. But I think just judge Cannon brings up a good point is why? Why aren't I standing here trying to create a new standing criteria? It's not at all what we're doing. We're just trying to say in a complaint, which is what we're guided by here. There needs to be an allegation of some harm, and it doesn't have to be an enormous harm, and it doesn't have to be a high dollar harm. But there has to be something more there and subjecting himself to the risk that he would be, um, have these have the um, a C. H. Requirements apply when the statute says you should not. Why isn't that imminent, if not actual? It's purely speculative because there are no facts. Respectfully, there are absolutely no facts in the complaint. The complaint doesn't doesn't allege that they're playing. The complaint parrots what the statute says, and it's a bare procedural violation. So this complaint fails for a variety of reasons, one of which is there are no facts to support any harm at all. But in this situation, what this court has found in the past is what distinguishes cases where standing exists and it doesn't is there's something actually something in the complaint that pushes it beyond the speculative to the concrete. Our position is there's no push here. There are no facts here. It literally is. There's a statute that says you can't do X. You did X. Therefore, we have standing. That's not where you're really running down your clock without addressing your substantive argument on whether this is a consumer transaction. Thank you, John. And I wanted to ask you if you could move into that area and tell me why, at least in so far as the origination fee and the interest, that this isn't a consumer debt transaction. The parties seem to be arguing that it's got to be one or the other. And I'm wondering whether it's a bifurcated situation. Could you address that? That if we agree with you under the Third and Fifth Circuit analysis that this is not a consumer transaction as to the tax deficiency, is there still a consumer transaction with regard to the I think St. Pierre, which is the recent case that came from the Third Circuit, really hits home the point. And when you do this analysis, it's a two-part analysis, Judge. Is it a credit transaction, one, and is it consumer in nature? We would suggest you don't have to get to the credit issue because it's not consumer in nature at any point. That resolves the question. It's a tax obligation. There is no authority to suggest that a tax obligation is consumer in nature. Therefore, it fails the second prompt. Back to your question, Judge from the Third Circuit. We were clear in police that the original source of the obligation, not the subsequent method of collection, determines whether the obligation constitutes a debt. And that's the test. Billings is important and police are important for two issues. The holding... St. Pierre is talking about the Fair Debt Collection Act, right? It's talking about a different statute. Does that make a difference or not? Not for this analysis. It can, Your question as to how it treated the debt collector. That's not relevant for our purposes. But in this case, what is relevant is both the holdings in those two cases, but also it tells you what the question presented is. And the question is, we don't look at the side information. And I promise I'm getting to your question. We don't look at the side information. We look at the underlying obligation and that determines whether it's credit. And in this case, it's a tax obligation. It's a tax obligation with respect to the municipality. But what we're looking at is the agreement between Propel and Curtis. And so you have TILA defining credit to exclude tax liens and assessments, but including third-party financing of such obligations. Correct. So why is this not... The only difference between getting a bank loan to pay off the taxes is that here, the bank would lend the money directly toward Curtis to Curtis. But it would help me if you didn't start shaking your head. I apologize, yes. And instead of paying... And Propel pays the municipality. But that's really the only difference between a bank obtaining a loan from a bank to pay the bank. Your Honor, we respectfully disagree. Let me explain why. A key feature of this obligation and what distinguishes it from a bank loan, in a bank loan situation, if Mr. Curtis took out a bank loan, he would then have two obligations, two separate obligations, one to the bank and one to the municipality. In this case, there's only one and there's always only one obligation. So how do we know that? Because if we look at the statute and we look at the language in the statute... And why is it true? Because he's always going to owe the taxes if he doesn't pay them and he's going to owe Propel if he doesn't comply with the contract. I don't understand that one at all, either why it would be true or why it would make any difference. It's true because Propel, under the statutory structure, can revert the tax obligation back to the municipality. But that doesn't mean there's not a debt to Propel. There isn't an obligation. There's a binary obligation under both circumstances, isn't there? No, because what we know from Billings and police is how we determine the obligation is looking at the initial obligation. In this case, as both cases have held, assigning the payment obligation itself to a third party does not create a new independent obligation. That's what both cases hold. But that's not, I mean, that's for my purposes, that's not helpful. Neither of them are binding and it doesn't go to the question that I'm posing about why isn't it a third party financing of a tax obligation. Right. Propel is a third party. It's financing a tax obligation which Curtis has obligated itself to pay back to Propel, although if Propel doesn't, is unable to, if it doesn't work out, it's, the obligation is still owed to the It doesn't really matter for the purposes of my question, what other circuits, I mean, what other authority there may be out there. Why isn't it third party financing? The example in the staff commentary is a bank. I understand that that's an example, but it's only an example. That's right. It's not, that doesn't set any parameters. It's just an example of when it might occur. It's not third party financing, Judge Duncan, because there is no new independent obligation. The obligation at issue remains the tax obligation. The entire time, there is no obligation other than the tax obligation. And so, There's no obligation to pay Propel? The obligation is, Is that what the transactions setting up the automated electronic transfer transactions are for, to pay Propel? In this case, Propel essentially services the city's debt. And is there no obligation to pay Propel? There's no obligation. Does the transaction obligate him? That's the whole point of agreeing to the, The CCH transaction, to allow Propel to deduct his bank account. The obligation, so there is no allegation that any of that happened, first, as to standing. But second, to your question, Judge, to your question, the obligation is to pay the tax obligation. Mr. Curtis's obligation is to pay it. You keep saying that, but it doesn't comport with the arraignment. There is no separate, there is no separate and independent obligation to pay Propel, other than the tax obligation. What difference, there is an agreement to pay in installments over time, to pay Propel. How is that not credit? It's not credit because it's not consumer in nature, Judge. There's two prongs. Well, okay, but you had said we didn't need to get to consumer in nature. So we're still stuck on credit. Right, no, I said you don't need, I may have misspoke. You don't need to get to credit because the fact that it's not consumer in nature disposes of the issue. So I probably wasn't as clear as I should be. You're saying consumer is the umbrella principle? Yes, and I apologize. I may have said that backwards on the front end. And it's not consumer because it's not offered for the subject of, the subject of the transaction isn't primarily for personal, family, or household purposes? That's correct because. You don't think paying real property taxes is for personal, family, or household purposes? I do not. I think paying a tax is incurred. What happens if they don't pay their property taxes? If they don't pay their real property tax, Judge? If they don't pay their real property tax, then there's a risk of foreclosure. But what the case law tells us, and Ray Stovall and the history of the case law is, that a tax obligation is not consumer in nature. And it's, in this case, it's not. I take the court's point, but the. Just saying that isn't helpful. In Ray Stovall is your authority, Judge, in that case. Runsky, this court has decided, takes a look at the function of the agreement. But there is no authority. What you want here is my opposing counsel get up and provide you with the authority that says otherwise. It is well held. But that's not helpful since that's still part of the question we have to decide. Did you have any more questions? You have some time for rebuttal.  Yes. Good morning, Your Honors. My name is Tom Dominoski, and I have the pleasure and privilege to represent Gary Curtis on the two issues before you. Issue one is whether the transaction was credit, which would apply to the Truth in Lending Act and one of the Electronic Fund Transfer Act claims. And issue two is whether Mr. Curtis has standing to raise his Electronic Fund Transfer Act claims. Regarding issue one, credit is defined in the Truth in Lending Act, and it's right to defer a debt. Regulation Z further provides the definition of credit, and the commentary explains that. Right. But in Regulation Z, the consumer has to pay back the bank. In this case, if there's a default, Mr. Curtis doesn't have to pay back, propel anything other than the origination fee and the interest. And isn't that a material distinction? I don't think that distinction is accurate, Your Honor. Well, what's inaccurate about it? He doesn't have to pay back, propel. Under the Virginia Statutory Authorization, which is 58.1-3018, the way this works is first there's the written agreement, and then the payment of the taxes, 58.1-3018-B1 says the taxes are paid. So the taxes are paid. When the taxes are paid in Virginia, Virginia law requires the treasurer to mark them as paid. Are we getting toward Judge Keenan's question? Is that an answer to Judge Keenan's question? Yes. When there's a default, can the third party individual, in this case, propel, proceed against the person for whom it paid taxes? Yes. With regard to anything other than the interest in principle? Yes. If there is a default, they can seek collection against that person. If there is a default, they can walk into general district court. They can... I thought the remedy was against the entity. There's a potential remedy if they choose and if the treasurer decides that the treasurer is satisfied with their collection efforts. They don't have to go that route. There's nothing in the statute nor anything in the agreement which prohibits propel from suing Mr. Curtis if he defaults in general district court. Are you conceding that that... I didn't read the regulations to suggest that it was necessary that it be a bank. I thought that was just an example or that the distinction that's being drawn makes a difference, that the obligation remains that of the city. Could you address sort of that threshold question? Can it only be a bank? No, it doesn't have to only be a bank. Anyone can be a creditor. Your Honor, if I loan money to Mr. Curtis under the statute, then I'm regulated. If I charge interest, then I'm regulated. You don't have to be a bank to be regulated by the Truth in Lending Act. I could extend credit to anyone to pay their taxes and I could put myself under the Truth in Lending Act by doing so. So the truth... I'm sorry, I didn't mean to interrupt, but... So what you're saying is that even though 99.9 percent of the third parties who get involved in this situation, such as Propel, would seek recourse against the locality, the fact that there is an avenue against the debtor in general district court necessarily makes this... In other words, there is a remedy, although not a realistic remedy. If somebody can't pay the installment, they're certainly not going to be able to pay the bulk of the obligation. That's what got them there in the first place. But you're saying the theoretical... Or not even theoretical, you're saying the statute allows you to proceed against... Yes. They have an option if they want to. Okay. And you're saying that's what makes it consumer in nature, even though in 99.9 percent of the cases, nobody's going to go after the person who can't pay an installment plan for the whole amount when the locality is standing there with an open wallet. I'm actually saying it's consumer in nature whether or not that happens. I was just pointing out that that's not the situation in this case. It's consumer in nature because at the initiation of the transaction, there is credit that is extended to pay the tax lien. And the two cases that they have in front of you are fundamentally different than that. Those two cases were actually assignments of the tax lien, assignments of the locality's rights to the entity putting up the money. But Propel is prohibited by statute from going against Curtis if Propel gets payment from the locality. Isn't that correct? No, it's not. I know that they put that in their briefs. And with all respect to their writing, it is not correct. You think that's not in the statute? I'm saying that it's not in the statute. What is in 58.1-3018 is the option for Propel to go to the city of Petersburg and demonstrate to the satisfaction of the treasurer. It's not an option that they have sole control over. It's their option if they want to, to go to the city of Petersburg and say, Person A defaulted. In the city of Petersburg, treasurer gets to say whether the treasurer is satisfied or not that Propel has demonstrated good faith efforts to collect the obligation. Let me ask you about, you were about to make a point regarding the assignment of the debt. And I think you were going to say that in this case, the assignment, the tax lien was itself never assigned to the third party in this case to Propel, unlike the cases in the Third and Fifth Circuit where there was an assignment. How does that help your case? Because it seems to me that cuts, that may actually cut against you because it ties the lien and your client back to the original tax debt and not to the credit obligation. My case starts with Regulation Z in the commentary that says third party financing to pay a tax lien is credit that's regulated by the Truth in Lending Act. Their opposition is two cases that did not involve this type of transaction where there is credit to the person and payment of a tax lien. Those cases, the facts in which the Second and the Fifth said that the commentary doesn't apply. The reason it didn't apply is it was the assignment of a pre-existing tax lien. In both those cases, the entity putting up the money took assignment of the municipality's pre-existing right to foreclose and the assignment of the tax lien then was not considered to be the credit extended to a consumer to pay a debt. So those cases said Regulation Z does not apply. This is not an assignment of a tax lien. This is a payment of the taxes and the taxes are paid. You seem to think, you said that there is, it makes a difference that the, under this arrangement, the Propel also has an avenue against Curtis Inn District Court. And what I'm having, I still don't understand why that makes any difference. Okay. It's still, I don't understand how it can be anything other than a credit extended to the taxpayer and paid back to Propel, although the owner and the ownership of the lien itself still remains with the municipality. I'm still not clear why it makes a difference that there may or may not be an avenue against the taxpayer. I didn't, I didn't mean to imply that it made a difference. The argument has been made that there is no avenue and that there, because there isn't an avenue, that makes a difference. All I was first trying to do was correct the record so that the facts are that there, there is an avenue. Statute though in C4, C458.1-3018 says any right of the third party to payment arising under a third party tax payment agreement shall terminate upon the receipt by the third party of a reimbursement payment from the treasurer. So that if they decide to go into court, excuse me, they decide to seek reimbursement from the treasurer of the locality, then they cannot proceed against the debtor even if there is an arrearage. Isn't that correct? If the treasurer of Petersburg decides that the treasurer of Petersburg is satisfied with their collection efforts and there, there is no standard for that in this statute, but they don't just get to say I get paid from the city. Right. The city. But, but I think what you're doing is you're waffling a little bit, if you don't mind my saying so, on the, the effect of C4. C4 definitely cuts off the right of the third party tax provider, payment provider, to recourse against the individual for whom they made the payment. And can you tell me why that doesn't affect the analysis of, of, of whether this is a consumer credit transaction? Right. What C4 does is prohibits them from a double recovery. I'm sorry? C4 prohibits them from a double recovery. Right. Once they're paid by someone who's essentially a guarantor of the principal. Right. That amount they can't get paid. In this case, the credit happens at the time of the transaction. The Truth in Lending Act looks to see at the time of the transaction is this credit to which Truth in Lending Act applies. And the reason is the Truth in Lending Act requires the written disclosures be delivered to the consumer prior to consummation. Right. But if this were credit, why would the statute cut off the right to go against Mr. Curtis after the locality had reimbursed the principal? It seems to me that the third party, if it's a credit transaction, would still have the right to proceed against the third party in general district court, as you say, for the arrearage. Right. Well, for two reasons. You proceed in general district court, you get a judgment, you docket the judgment in the circuit court, and you can sell the property. Petersburg is actually known to default on its obligations. Petersburg actually has had its firetruck repossessed. The idea that they might ask Petersburg for payment and Petersburg say, we actually can't pay you, is a very real probability. And in fact... That's not responsive, though, to the question. Well, what I'm saying is you only get to four. You only get to terminating their right to collect if they've actually collected from the city of Petersburg. Right. But there would still be an arrearage, because under the collection procedure, they'd only have a right to the principal, correct? Under the statute. What they have a right to get back from the city is the principal for any taxes that have not been paid. The first six months of payments go entirely to the processing fee, so that after someone has made five monthly payments... Right. So they don't have a right to get back the origination fee. Isn't that correct? They do not have a right to get the origination fee back from the municipality. Okay. So if it's a credit transaction, as you say, then why would the statute cut off the right of the third-party tax payment payer to go against the payee for the origination agreement fee that they are out? If it's a credit transaction, shouldn't they be able to sue? And yet the statute says, no, they can't. And I apologize. I didn't understand your question before. I wasn't... Because that processing fee gets paid. I don't want to hold you up. You go ahead. No, but I actually now understand your question. And I'm thinking. Okay. Thank you. It is simply an adjustment of what is paid. It is... We all the time have credit transactions where what occurs on default and what can be collected on default is a function of state law. The Truth in Lending Act does not regulate the substance of a credit transaction. The substance of a credit transaction is regulated by state law, which is why in Virginia there are title lenders who charge triple-digit interest rates, but they don't do that in North Carolina. Those are both credit under the Truth in Lending Act and the Truth in Lending Act provides a format by which 100% and 200% loans are disclosed along with loans that are for 30%. We also have a law in Virginia that title loans cannot be collected at all in state court, but a title loan is only subject to the repossession of the vehicle. And when the individual makes the title loan, they are cut off from actually getting any payment of any amount due by suing in general district court. The cutting off the right to collect the debt in court does not at all touch on the federal issue of how to disclose a credit transaction. And I apologize that I didn't understand your question. And it doesn't, it wouldn't necessarily affect whether it is a credit transaction in the first place, because that would make it pretty circular. I don't think it does. Credit is defined as the right to defer payment. The Regulation Z specifically says financing to pay a tax debt is credit covered by this statute. The fact that a tax debt itself is not a consumer credit transaction, the fact that a tax debt is not something to which the FDCPA initially applies because it's not in the nature of the consumer debt. Actually, I was kind of agreeing with you. It would seem to me that the definition of what constitutes credit would not be determined or necessarily impacted by statutory rights of recovery on default. The question of whether or not it's credit arises out of the nature of the transaction at its inception for purposes of defining credit under the Truth in Lending Act. Yes. And the Truth in Lending Act says financing to pay a tax debt is credit covered by the statute. We're here today on this issue because in two other states, those states had authorizing language that allowed for the assignment of the tax lien of the locality where the assignor stepped into the shoes of the locality and there are two decisions that say that is not what Regulation Z is talking about because this was not credit that was extended to pay a debt. But still, I don't think you've, at least for me, have answered the problem of the obligation is not expunged. The obligation to pay the tax is not expunged at the time of the transaction. The obligation to pay is now in the agreement between Propel and Mr. Curtis. So there is an obligation to pay, but that's the same way as if Mr. Curtis had gone to a bank and said, I want a line of credit to pay my taxes and the bank had a closing, he wouldn't walk out from that closing with the check in his hand. At the closing, the bank would say, well, we're paying your taxes. They have to go directly to the people that are paying the taxes because when the taxes are paid, the tax lien is extinguished. Now, in this case, Virginia allows for the municipality, if it decides to reimburse Propel, if Propel asks, it allows the municipality to put the debt back on the tax rolls. That is a consequence of default. But the lien is never extinguished until the payment is complete. Actually, under Virginia Code. After all the payments under the TPA are fully completed, that's only when the obligation is extinguished. Actually, no, it's not, Your Honor. Under Virginia Code 58.13930, when taxes are paid, they are to be given to the treasurer and the treasurer is to record the taxes as paid. What that does is it moves it off the tax rolls. There is no longer a delinquent tax. Are you saying under 3018 that it moves it off the tax rolls? How could it if there's still, if the lien goes back onto the payee, Mr. Curtis? It's not expunged. Perhaps I don't, it has the ability to spring back, but it doesn't exist on the tax rolls. Under 3018B, the taxes are paid. When the taxes are paid under Virginia Code, the treasurer has to mark them as paid. Then if Propel says there's default, if the treasurer is satisfied the collection efforts have been made, and if the city of Petersburg is able to pay its debts, which historically it hasn't been able to, then it can be reinstated. In fact, the word reinstate is in C-2. I'm sorry. In C-2, it says any treasurer who reimburses a third party pursuant to this subsection shall reinstate the amount of such reimbursement. Not reinstate the lien. The lien exists. It's just how much is the lien. Isn't that what C-2 is talking to? Respectfully, no, Your Honor. Tax lien only exists if there's delinquent taxes on the tax rolls. One of the reasons why cities think this might be a good idea for them is cities also have to report their delinquent taxes every year under 58.13921, and this allows them to not report those taxes as delinquent. If the consumer doesn't pay, if Propel makes the request, if Petersburg does pay, it can come back on the tax rolls, and at that point, with it on the tax rolls, there's a tax lien. Maybe you could help me by answering this question. Does the definition of what constitutes credit under the Truth in Lending Act require expungement as a condition of constituting credit? No. Okay, well, do you have any authority for that proposition or any authority against that proposition? The Truth in Lending Act looks to whether the creditor has extended credit to a consumer, whether that agreement is there. They have also made clear that tax debts are not credit, that the municipalities, by assessing taxes on their constituents, do not become creditors. These are completely two different animals, and then the two cases that, and I know I'm out of time, and we didn't even talk about standing. Thank you. Finish what you were, you were in the middle of a thought, if you could complete that. I was just going to say that there are two different animals, the existence of a tax debt, which is never credit, which in those two cases was assigned, and the creation of a loan to pay taxes, which is what we have here. Thank you. Mr. Saforth, you have a few minutes. Thank you, Judge. Judge Duncan, let me try to do a better job of what I didn't do a great job of when I first got up. We had talked about, and I'm not sure I was as responsive as I should have been on credit, but I think maybe going back to the basics of credit, it helps better explain our argument in this case. Credit is required. You need two things to be a consumer credit transaction. There has to be credit, and it has to be consumer in nature. For credit, in order for there to be credit, there must be a debt, and debt is governed by Virginia law in this case, and in Virginia, a tax obligation is not a debt, and so I don't think I made that point as well as I could have before, but that's why it's significant. But that's also what the regulation says. That's not inconsistent with the regulation, so that doesn't add anything to it. What's different here is the third-party financing of that debt. Right, and what is different, in our opinion, from the argument you just heard is it isn't a third-party financing situation such as a bank, like Regulation Z. What this is is an assignment. But what I'm still trying to understand, and what I couldn't get you to respond to, and you seem to be going back to it, is what difference does it make? The bank circumstance is put out there as an example. It is not limited to, so why does it matter for purposes of the definition of credit and the Truth in Lending Act, why does it matter that it's not a bank? And what authority, and I do not, let's start. So the entity, the focus is not the entity, the focus is the obligation. The focus is the transaction. The focus is the obligation. The definition of third-party financing for a tax obligation. Right. The difference between this scenario and the example, the default position is a tax payment is not a debt, and so all we have in Regulation Z is an exception and an example, and I have no reason to believe that that is the only example, Judge, to your point. But there's distinctions between our situation and that example. There's not a loan here. I give you that. Okay. I'm just not sure why, given the debt, what I'm trying to get to. So why does it matter? Is why, what difference it makes, given what the Truth in Lending Act calls. The difference is the new obligation, right? If we look at the Third Circuit and the Fifth Circuit, they didn't care about the tax lien and the tax lien assignment. Those cases are all very clear. What they turned their decisions on was the source of the original obligation, right? The original obligation determined that it was not a debt, and they both concluded that simply assigning the right to payment, however you choose to do it under the various state statutes, that didn't transform a non-debt, which everybody concedes is a non-debt, into a debt. In this case, I think it's just, Judge Diaz, you pointed out, in this case, we have a stronger argument, because there is no new obligation at all. So we're one step further away from the exception, because in this case, there's one obligation, and you can simply revert it back to the city. That's significant. Judge Duncan, I feel that you're not fond of that response, but that's our answer. I mean, it's the obligation you look at. We know that from the test. I just keep coming back to the statutory definition, and I'm having trouble getting close. Because there's no loan. There is no loan. There is no new independent loan being made here. Mr. Curtis does not get access to one penny. No one pays him any money. He doesn't have any money. He has the ability to move who he pays his tax obligation to from the city to Propel, and he does that so it eases the burden on him, and it's a payment plan. But in that situation, why it's different than a bank loan is because, in this case, Propel is servicing the obligation. It's not a new independent obligation. That's determinative. In an earlier question, maybe, Judge Cannon, you had asked about the authorization on the standing component of it, and I would point to Exhibit B in the complaint, which speaks of different ways to pay other than through ACH. And so it's a further example of why there's no actual or concrete harm in this case, Judge. And the final point I will make, because my time is running, is even if we move past credit, there is no authority. We have to be consumer in nature as well as credit, and a tax obligation is not consumer in nature. The obligation here doesn't change. It's not transformed based on what the Third Circuit and the Fifth Circuit have said. There's nothing that transforms it, and we know it's not transformed because it goes right back to the city of Petersburg. And so in that situation, it's one single obligation. That's our position. Thank you for your time. I appreciate it. Thank you very much. We will come down and greet counsel. We'll come down and greet counsel and proceed directly to our last case.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz